UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RAYMOND TUCKER,

      Petitioner,

                                CASE NO. 2:06-CV-10250
v.                              JUDGE LAWRENCE P. ZATKOFF
                                MAGISTRATE JUDGE PAUL J. KOMIVES

CARMEN PALMER,

      Respondent.
                             /

**REPORT AND RECOMMENDATION**

*Table of Contents*

I.    RECOMMENDATION ........................................................... 1
II.   REPORT ........................................................................... 1
    A.   *Procedural History* ........................................................ 1
    B.   *Factual Background Underlying Petitioner's Conviction* ............... 2
    C.   *Standard of Review* ..................................................... 3
    D.   *Analysis* .................................................................. 5
        1.   *Clearly Established Law* ........................................... 6
        2.   *Analysis* ........................................................... 7
    E.   *Conclusion* ............................................................. 12
III.  NOTICE TO PARTIES REGARDING OBJECTIONS ............................ 12

\*    \*    \*    \*    \*

I.    RECOMMENDATION: The Court should grant petitioner's application for the writ of habeas corpus.

II.   REPORT:

A.   *Procedural History*

    1.    Petitioner Raymond Tucker is a state prisoner, currently confined at the Riverside Correctional Facility in Ionia, Michigan.

    2.    On February 3, 2004, petitioner was convicted of one count of second degree home

invasion, MICH. COMP. LAWS § 750.110a, following a bench trial in the Wayne County Circuit Court. On February 24, 2004, he was sentenced to a term of 7-15 years' imprisonment.

3.   Petitioner filed a delayed application for leave to appeal in the Michigan Court of Appeals raising, through counsel, the following claim:

> DEFENDANT'S CONVICTION MUST BE OVERTURNED BECAUSE THERE WAS INSUFFICIENT EVIDENCE TO FIND DEFENDANT GUILTY BEYOND A REASONABLE DOUBT.

The court of appeals denied petitioner's application for leave to appeal "for lack of merit in the grounds presented." *People v. Tucker*, No. 259604 (Mich. Ct. App. May 13, 2005).

4.   Petitioner, proceeding *pro se*, sought leave to appeal this issue to the Michigan Supreme Court. The Supreme Court denied petitioner's application for leave to appeal in a standard order. *See People v. Tucker*, 474 Mich. 936, 706 N.W.2d 26 (2005).

5.   Petitioner, proceeding *pro se*, filed the instant application for a writ of habeas corpus on January 19, 2006. As grounds for the writ of habeas corpus, he raises the sufficiency of the evidence claim that he raised in the state courts.

6.   Respondent filed an answer on July 27, 2006. Respondent contends that petitioner's claim is without merit.

7.   Petitioner filed a reply to respondent's answer on August 11, 2006.

B.   *Factual Background Underlying Petitioner's Conviction*

The facts leading to petitioner's conviction were accurately summarized in petitioner's brief filed with his delayed application for leave to appeal:

> . . . . The only prosecution witness called was Nicholas Sutliff, who identified Defendant in the courtroom. Sutliff testified that he had known Defendant since 1969, as they were neighbors. Sutliff testified that on August 18, 2003, he was working at his home located on Pennie Street in Dearborn Heights, Wayne County,

Michigan.  Sutliff was mowing the front lawn.  Sutliff stated that his home was closed, with the front door locked and the back door pulled shut.  Trial transcript (T) pp 6-10.

Sutliff stated he saw Defendant jump over a fence, coming from the area of Sutliff's back yard towards Sutliff who was in his side yard.  Sutliff testified that Defendant passed within six feet while leaving the Sutliff yard.  Sutliff stated that when he saw the defendant, the defendant was 20 to 25 feet away from Sutliff's rear door.  T, pp 11-12.

Sutliff testified that he had 2 rings valued at $500.00 laying on top of a dresser in his bedroom before he had gone out to mow his lawn.  When Sutliff re-entered his home after seeing defendant, he noticed nothing missing.  Sutliff left the home and spoke with his neighbor, and then testified that he later determined that two rings were missing, although a watch sitting next to the rings on the dresser was still there.  T, pp 13-14.

No other witnesses were presented.  Following closing arguments by the prosecution and the defense attorney, the trial court found that the prosecution had proven its case beyond a reasonable doubt, and found defendant guilty of home invasion in the second degree.

In the trial court's findings of fact, the trial court focused on the credibility of Mr. Sutliff, finding that he was credible.  The court stated:

> Because in the context of this the only thing I could see that would be a logical issue is or are matters involving identification and/or credibility with the indication of some possible vendetta or other venture, I guess you might say, because of some feelings about Mr. Tucker.

Then, in summary, the court stated:

> I'm persuaded that the prosecution has proven their case beyond a reasonable doubt here, that the address was entered without permission and that it was done with the intent to commit larceny, and more importantly that the witness has identified the Defendant as the person that entered the dwelling and I am persuaded beyond a reasonable doubt that he identifies this person as the person and not because of some prior history or some kind of vendetta, that he is the person that he saw.

Appellant's Delayed Application for Leave to Appeal, in *People v. Tucker*, No. 259604 (Mich. Ct. App.), at 5-8.

C.     *Standard of Review*

Because petitioner's application was filed after April 24, 1996, his petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No.

104-132, 110 Stat. 1214 (Apr. 24, 1996). *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997). Amongst other amendments, the AEDPA amended the substantive standards for granting habeas relief by providing:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"[T]he 'contrary to' and 'unreasonable application' clauses [have] independent meaning." *Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see also*, *Bell v. Cone*, 535 U.S. 685, 694 (2002). "A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams*, 529 U.S. at 405-06); *see also*, *Early v. Packer*, 537 U.S. 3, 8 (2002); *Bell*, 535 U.S. at 694. "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also*, *Bell*, 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or

4

erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also*, *Williams*, 529 U.S. at 409.

By its terms, § 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with "clearly established federal law as determined by the Supreme Court." Thus, "§ 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence." *Williams*, 529 U.S. at 412. Further, the "phrase 'refers to the holdings, as opposed to the dicta, of [the] Court's decisions as of the time of the relevant state-court decision.' In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (citations omitted) (quoting *Williams*, 529 U.S. at 412).

Although "clearly established Federal law as determined by the Supreme Court" is the benchmark for habeas review of a state court decision, the standard set forth in § 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early*, 537 U.S. at 8; *see also*, *Mitchell*, 540 U.S. at 16. Further, although the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue. *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Phoenix v. Matesanz*, 233 F.3d 77, 83 n.3 (1st Cir. 2000); *Dickens v. Jones*, 203 F. Supp. 354, 359 (E.D. Mich. 2002) (Tarnow, J.).

D.     *Analysis*

1. *Clearly Established Law*

The Due Process Clause of the Fourteenth Amendment "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In Re Winship*, 397 U.S. 358, 364 (1970). Under the pre-AEDPA standard for habeas review of sufficiency of the evidence challenges, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). Reviewing courts must view the evidence, draw inferences and resolve conflicting inferences from the record in favor of the prosecution. *See Neal v. Morris*, 972 F.2d 675, 678 (6th Cir. 1992). In determining the sufficiency of the evidence, the court must give circumstantial evidence the same weight as direct evidence. *See United States v. Farley*, 2 F.3d 645, 650 (6th Cir. 1993).

However, under the amended version § 2254(d)(1) a federal habeas court must apply a more deferential standard of review of the state court decision. Thus, the question here is whether the Michigan Court of Appeals's application of the *Jackson* standard was reasonable. *See Gomez v. Acevedo*, 106 F.3d 192, 198-200 (7th Cir. 1997), *vacated on other grounds sub nom. Gomez v. DeTella*, 522 U.S. 801 (1998); *Restrepo v. DiPaolo*, 1 F. Supp. 2d 103, 106 (D. Mass 1998).

While a challenge to the sufficiency of the evidence on an established element of an offense raises a federal constitutional claim cognizable in a habeas corpus proceeding, *see Jackson*, 443 U.S. at 324, "[t]he applicability of the reasonable doubt standard . . . has always been dependent on how a State defines the offense that is charged in any given case." *Patterson v. New York*, 432 U.S. 197, 211 n.12 (1977); *see also*, *Jackson*, 443 U.S. at 324 n.16; *Mullaney v. Wilbur*, 421 U.S. 684, 691

(1975). Thus, "[a] federal court must look to state law to determine the elements of the crime." *Quartararo v. Hanslmaier*, 186 F.3d 91, 97 (2d Cir. 1999). Accordingly, it is necessary to examine the elements of second degree home invasion under Michigan law. The Michigan home invasion statute provides, in relevant part:

> A person who breaks and enters a dwelling with intent to commit a felony, larceny, or assault in the dwelling, a person who enters a dwelling without permission with intent to commit a felony, larceny, or assault in the dwelling, or a person who breaks and enters a dwelling or enters a dwelling without permission and, at any time while he or she is entering, present in, or exiting the dwelling, commits a felony, larceny, or assault is guilty of home invasion in the second degree.

MICH. COMP. LAWS § 750.110a(3). Pursuant to the plain terms of the statute,

> [t]he elements of second-degree home invasion are: (1) that the defendant (a) broke and entered a dwelling, or (b) entered a dwelling without permission, and (2)(a) that when the defendant broke and entered or entered without permission, he intended to commit a (i) felony, (ii) larceny, or (iii) assault therein, or (b) that the defendant committed a (i) felony, (ii) larceny, or (iii) assault while entering, present in, or exiting the dwelling.

*People v. John*, No. 263082, 2006 WL 2872553, at *1 (Mich. Ct. App. Oct. 10, 2006) (per curiam); *see also*, *People v. Nutt*, 469 Mich. 565, 593, 677 N.W.2d 1, 16 (2004).

    2.    *Analysis*

Petitioner contends that there was insufficient evidence that he entered the victim's home to sustain his conviction. The Court should agree, and conclude that petitioner is entitled to habeas relief on this claim.

Simply put, there was no evidence whatsoever that petitioner entered the victim's home, nor was there any evidence from which such an inference could be made. Sutliff merely testified that petitioner, whose family lived next door to him and who thus had reason to be in the area, was 25-30 feet from his door, and sometime thereafter Sutliff noticed that two rings were missing. There was

no evidence–either eyewitness testimony or physical evidence–presented that petitioner was actually in Sutliff's home, nor was there evidence which connected petitioner to the rings that were taken. The prosecution's case rested simply on the supposition that petitioner must have entered the home and stolen the rings based on his temporal and geographic proximity to the crime. This supposition alone cannot constitute sufficient evidence to prove beyond a reasonable doubt that petitioner entered the home, nor can the Michigan courts' conclusion that the evidence was sufficient be deemed reasonable.[1]

Although there are no Michigan court decision directly on point, the unreasonableness of the state courts' adjudication of petitioner's claim is shown by the cases in which the Michigan courts have found sufficient evidence of entry, not one of which is based on mere temporal and geographic proximity alone. For example, in *People v. Horton*, No. 256740, 2005 WL 3077152, at *2 (Mich. Ct. App. Nov. 17, 2005) (per curiam), the court found the evidence sufficient because, in addition to evidence of proximity, the prosecution presented evidence that the defendant attempted to use a credit card stolen from the victim's dorm room, the defendant possessed cash in an amount similar to that stolen, and property stolen from the room was found in the car defendant was driving. In *People v. Rhea*, No. 235548, 2003 WL 1439850, at *2 (Mich. Ct. App. Mar. 20, 2003) (per curiam), evidence of entry was established by testimony that the victim's mother yelled "what are you doing in my house," the defendant was seen running from the home shortly thereafter, and the defendant

---

[1] To the extent that the trial court found petitioner guilty because, in the trial court's words, the victim "has identified the Defendant as the person that entered the dwelling," Trial Tr., at 33, the state court resolution of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented[.]" 28 U.S.C. § 2254(d)(2). The victim testified only that he saw petitioner outside his home, about 25-30 feet away from the door. He never testified that he saw petitioner inside his home, or entering or exiting the home.

was observed discarding a white bag which contained property taken from the home. In *People v. Quarles*, No. 188014, 1997 WL 33347964, at *1 (Mich. Ct. App. May 16, 1997), the evidence was sufficient because in addition to evidence that the defendant was seen near the home, the prosecution presented evidence that the defendant fled the police shortly after the home invasion, and was found both with property stolen from the home in his car and on his person, and with a screwdriver of the type used to gain entry into the home. In *People v. Potts*, No. 245588, 2004 WL 1365954, at *1 (Mich. Ct. App. June 17, 2004) (per curiam), eyewitnesses testified that the defendant entered the home. In *People v. Horacek*, No. 179755, 1996 WL 33364111, at *1 (Mich. Ct. App. June 4, 1996) (per curiam), sufficient evidence of entry was established by evidence that six of seven fingerprints lifted from the window through which entry was gained belonged to the defendant, the defendant lied about his reason for being in the area and attempted to concoct a false alibi, and the defendant was found with property taken from the store. Finally, *People v. Toole*, 227 Mich. App. 656, 661, 576 N.W.2d 441, 444 (1998), the evidence was sufficient because, in addition to evidence of the defendant's proximity and opportunity to commit the entry, he fled the police and was seen carrying the stolen property shortly after the illegal entry.

Each of these cases found the evidence sufficient because the evidence of proximity and opportunity was coupled with some other evidence which could give rise to an inference that the defendant entered the home, such as possession of the stolen property, possession of the tools used to gain entry, and consciousness-of-guilt evidence such as flight. In petitioner's case, no such evidence was presented. The prosecution presented evidence which showed nothing more than that petitioner was near the home, not that he entered the home or was in possession of any fruits of the crime.

The unreasonableness of the state courts' determination is also shown by cases from other jurisdictions finding that evidence of proximity alone is insufficient to establish the element of entry for a burglary or similar offense. Indeed, the cases finding insufficient evidence on facts similar to those here are legion. *See, e.g.*, *Azcuy v. State*, 705 So. 2d 129, 130 (Fla. Ct. App. 1998) (evidence insufficient to sustain conviction for burglary involving theft of flower from flower court; victim testified only that she saw defendant stealing flowers falling from the cart, and surmised that he had used a stick nearby to cause the flowers to fall, but she had not seen him actually enter the court or use the stick); *Ruffin v. State*, 556 S.E.2d 191, 192 (Ga. Ct. App. 2001) (evidence insufficient to establish defendant entered car notwithstanding that his fingerprints were on outside of car, where there was no evidence that defendant was inside the vehicle or possessed any stolen property); *State v. Arrington*, 514 So. 2d 675, 678 (La. Ct. App. 1987) (defendant's proximity to building entered and possession of property stolen from building insufficient to establish entry where there was no physical or eyewitness evidence that defendant had entered and defendant offered plausible alternative explanation for possession of the property); *People v. Peterson*, 466 N.Y.S.2d 800, 800 (1983) (evidence that defendant was seen walking near home around time of break-in was insufficient to establish entry where there was "absolutely no proof offered . . . which demonstrated that defendant entered the . . . residence."); *People v. Smith*, 333 N.Y.S.2d 135, 136-37 (1972) (evidence of defendant's presence in apartment building and possession of stolen property insufficient when there was no evidence that defendant entered the actual apartment which had been burglarized, defendant was lawfully in the building visiting another tenant, and offered alternative explanation for possession of property); *Edwards v. State*, 867 S.W.2d 90, 94 (Tex. Ct. App. 1993) (evidence that defendant was in vicinity of home which had been broken into and had disappeared

from witnesses' view around the back of the house insufficient to establish entry where "[n]o witness saw him enter or carry any objects from the home, and the State offered no physical evidence showing his actual presence in the house."); *State v. Angelucci*, 405 A.2d 33, 36 (Vt. 1979) (evidence of defendant's presence in area of break-in and possession of stolen property insufficient where there was no other evidence that defendant had entered the structure).

Finally, although involving a different crime, this case is similar to *McKenzie v. Smith*, 326 F.3d 721 (6th Cir. 2003). In that case, the petitioner was convicted of assaulting with the intent to murder the three-year-old daughter of his girlfriend. The victim was discovered unconscious on the floor of a vacant, unheated building on a cold day, dressed only in a t-shirt and overalls, with no coat, socks, or shoes. The evidence against the petitioner consisted of the victim's out-of-court statement to her grandmother identifying petitioner as her assailant, as well as evidence that petitioner was in the home, had the opportunity to commit the crime, and was found crying in his room sometime after the victim was discovered missing but before she had been discovered in the vacant building. *See id.* at 723-24. However, "[t]he state produced no physical evidence linking McKenzie to [the] assault." *Id.* at 724. On these facts, the Sixth Circuit found that the evidence was insufficient to sustain petitioner's conviction, and that he was entitled to habeas relief. The court explained that the victim's out-of-court statement was insufficient to establish guilt because she was incompetent to testify and was in bad physical condition when the statement was made. *See id.* at 728. As relevant here, the court also rejected the state's argument that the circumstantial evidence was sufficient. The court explained that petitioner's presence in the home, and thus opportunity to commit the crime, alone was insufficient to establish guilt where "there was no physical evidence or eyewitness testimony linking McKenzie to the assault on [the victim]." *Id.* Similarly, here, the

11

prosecution presented evidence only of petitioner's presence and opportunity to have entered the victim's home. However, the prosecution did not present any evidence of his actual entry, such as physical evidence or eyewitness testimony.

In short, there was absolutely no evidence offered by the prosecution to show that petitioner ever entered the victim's home. Even in the light most favorable to the prosecution, the evidence showed nothing more than that petitioner was near the home at about the time the rings went missing. Because the prosecution was required to prove beyond a reasonable doubt that petitioner actually entered the victim's home, the evidence is insufficient to sustain petitioner's conviction. And, in light of the complete absence of evidence and the case law discussed above, the Michigan courts' contrary conclusion was an unreasonable application of *Jackson v. Virginia*. Accordingly, the Court should conclude that petitioner is entitled to a writ of habeas corpus.

E.   *Conclusion*

In view of the foregoing, the Court should conclude that the state courts' resolution of petitioners claim resulted in a decision which involved an unreasonable application of clearly established federal law, and therefore that petitioner is entitled to a writ of habeas corpus. Because a finding that the evidence was insufficient precludes retrial on the charges, *see Patterson v. Haskins*, ___ F.3d ___, ___, 2006 WL 3068988, at *4 (6th Cir. Oct. 31, 2006) (discussing *Burks v. United States*, 437 U.S. 1, 19 (1978) and *Greene v. Massey*, 437 U.S. 19, 24 (1978)), the Court should grant petitioner an unconditional writ instructing respondent to release petitioner.

III.   NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C.

§ 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *See Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991). *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

                                                                  s/Paul J. Komives
                                                                  PAUL J. KOMIVES
                                                                  UNITED STATES MAGISTRATE JUDGE

Dated: 12/15/06

> The undersigned certifies that a copy of the foregoing order was served on the attorneys of record by electronic means or U.S. Mail on December 15, 2006.
>
>                               s/Eddrey Butts
>                               Case Manager